United States District Court
Middle District of Florida
Jacksonville Division

**UNITED STATES OF AMERICA,**

    *Plaintiff,*

v.                                                No. 3:15-cr-89-J-34PDB

**JON CHRISTOPHER STOUNE,**

    *Defendant.*

___

## Report and Recommendation

Jon Stoune is serving a 210-month prison term imposed in a judgment entered on August 16, 2016, Doc. 73, and affirmed on May 31, 2017, Doc. 100. The United States Supreme Court denied a petition for a writ of certiorari on October 2, 2017. Doc. 107. Pending is his recently filed amended motion for relief under 28 U.S.C. § 2255, Doc. 131. *See Stoune v. United States*, No. 3:18-cv-204-J-34PDB (Doc. 25). This report and recommendation addresses a pro se motion for return of property he filed in the criminal case on January 16, 2018, Doc. 117, the United States' response, Docs. 127, 127-1, and his reply, Doc. 128. With the criminal case closed, the motion initiates a civil action in equity.

## Background

This case arose out of an investigation stemming from "Operation Predator 2015," an operation hosted by the Volusia County Sheriff's Office, with participation by the St. Johns County Sheriff's Office ("SJCSO") and the North Florida Internet Crimes Against Children Task Force. Doc. 87 at 189–90; Doc. 88 at 246.

For several weeks in March and April 2015, Stoune communicated online with someone he thought was a 14-year-old deaf girl. Gov't Tr. Exs. 1–10. The

communications included discussions of "BDSM" (bondage, domination, sadism, and masochism) and sexually explicit messages, photographs, and videos. Gov't Tr. Exs. 3, 5, 6–10. When the communications progressed to plans for an in-person meeting at the St. Augustine Beach pier, SJCSO officers gathered to formulate a plan to arrest Stoune for violations of state law. Doc. 87 at 60–62. The SJCSO sought and received assistance from the St. Augustine Beach Police Department. Doc. 87 at 62–63.

On April 21, 2015, Stoune arrived at the pier in a VW Passat, parked the VW Passat in a parking lot, walked along a boardwalk, and leaned against a wall, at which point officers arrested him. Doc. 87 at 64–75, 107–17, 131–34; Doc. 88 at 248-51. He wore a baseball cap and sunglasses and had on his person or in his pockets a camera, an iPhone, vibrators, batteries for the vibrators, an "anal plug," and condoms. Doc. 87 at 101–05, 142–60; Gov't Tr. Exs. 52–58. In a bag tossed into the bed of a truck parked next to his 2004 VW Passat were empty packages for the vibrators and anal plug. Doc. 87 at 75–77; Gov't Tr. Exs. 59–61. The SJSCO officers arrested Stoune for state crimes of soliciting a child or person believed to be a child for unlawful purposes, traveling to meet a minor, transmitting material harmful to minors by electronic means, and lewd and lascivious exhibition via a computer, *see State v. Stoune*, Case No. 2015CF000603A (Fla. 7th Jud. Cir.), and impounded the VW Passat. Doc. 87 at 75, 135.

On May 1, 2015, SJCSO officers went to Stoune's residence and entered with his wife's (now ex-wife's) permission. Doc. 87 at 159–60, 180. The background in photographs of his genitalia he had transmitted online matched the background of his bedroom, including an area where a computer, tower, and printer were kept. Doc. 87 at 26–27, 161–62.

On May 4, 2015, SJCSO officers executed a warrant to search the VW Passat. Doc. 87 at 75, 135. Found were Stoune's wallet; his driver's license; his bank identification card; riding crops; a Target bag with a camera tripod; a Lowes bag with rope and rope tighteners; a black balaclava; a black bag with straps and restraints; a

blue backpack with digital storage media and a computer; and a black backpack with baby wipes, baby oil, a leather belt without a belt post, a "Wharton sensory wheel," a metal ring, a media card, condoms, lubrication gel, kids washable paint, paintbrushes, moleskin (commonly used to put on skin under a restraint to prevent chaffing), "snap clamps," metal clips, "nipple clamps," "anal beads and strings," a leather "slapping device," a "rubberized two-tone stick," a "leather device commonly referred to as a cat o'nine tail[] for whipping," a dog leash, a wooden paddle, a metal paddle, and a "padded club-style stick." Doc. 87 at 142–59; Gov't Tr. Exs. 15–51.

On May 22, 2015, Stoune's wife initiated dissolution-of-marriage proceedings. *See* Doc. 9 in *Stoune v. Stoune*, No. 552015DR000862A000XX (Fla. 7th Jud. Cir.).[1]

On June 18, 2015, a federal grand jury returned the indictment against Stoune. Doc. 1 (later superseded, Doc. 27). On August 25, 2015, he appeared here on a writ from the SJCSO Pretrial Detention Facility. Doc. 6.

On October 16, 2015, the state court entered final judgment of dissolution of marriage. *See* Doc. 46 in *Stoune v. Stoune*, No. 552015DR000862A000XX (Fla. 7th Jud. Cir.).

The federal case proceeded to trial. Docs. 87–89. The United States' exhibit list described 106 items of evidence—all admitted into evidence—including screen captures of the online communications, video clips exchanged during the online communications, photographs of the VW Passat, the items seized from Stoune's person and pockets and from the VW Passat, and photographs of Stoune's bedroom.

---

[1]At any stage of a case and on its own, a court may judicially notice a fact that cannot be reasonably disputed because it either is generally known or can be readily and accurately determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)–(d). Here, the Court may judicially notice state criminal and divorce proceedings because they can be readily and accurately determined from sources whose accuracy cannot reasonably be questioned (the state court dockets).

Doc. 53. Testimony included that the SJCSO has a policy of seizing and forfeiting vehicles relating to crimes, and under that policy planned to forfeit the VW Passat. Doc. 87 at 79, 135.

On March 24, 2016, a jury returned a verdict finding Stoune guilty of attempting to entice a minor to engage in illegal sexual activity, advertising child pornography, and attempting to produce child pornography. Doc. 58.

On August 17, 2016, state charges were nolle prossed.

On August 26, 2016, the Court sentenced Stoune to serve 210 months' imprisonment. Doc. 73. Defense counsel did not object to forfeiture of the camera and iPhone that had been seized from Stoune's person upon his arrest but asked if the United States could return items on them that were not contraband, such as family photos. Doc. 91 at 43–44. The prosecutor stated the United States was flexible and would talk to the agent about the request. Doc. 91 at 44.

According to SJCSO records submitted in response to Stoune's current motion for return of property, there were thirty-seven items or groups of items of evidence associated with the case. Docs. 127-2, 127-3. Of the thirty-seven items, the SJCSO released sixteen to the FBI three days after Stoune's initial appearance in federal court. Doc. 87 at 154; Docs. 127-2 at 1–3, 127-3 at 1, 12, 19–22, 24–29, 32–35. The sixteen items included the camera, the iPhone, and the other items seized from Stoune's person upon his arrest and from the VW Passat upon execution of the search warrant. Doc. 127-2 at 1–3; Doc. 127-3 at 1, 12, 19–22, 24–29, 32–35.

Of the remaining twenty-one items, the SJCSO destroyed eighteen on October 18, 2016—62 days after the state charges had been nolle prossed.[2] Doc. 127-2 at 1–2;

---

[2]Fla. Stat. § 705.105 provides,

> (1) Title to unclaimed evidence or unclaimed tangible personal property lawfully seized pursuant to a lawful investigation in the custody of the court or clerk of the court from a criminal proceeding or seized as

4

Doc. 127-3 at 3–11, 13–18, 36, 37. The eighteen items were hard drives and power cords, laptops and power cords, other iPhones and an iPod, servers and a power supply, computer towers, a floppy disk, and a bag with miscellaneous computer components. Doc. 127-2 at 1–2; Doc. 127-3 at 3–11, 13–18, 36, 37. It is unclear from the SJCSO records from where those items were collected, but they presumably were items SJCSO officers collected from Stoune's home when they had taken photographs of his bedroom with his then-wife's permission. *See* Doc. 127-6 (November 26, 2017, letter from Stoune's now ex-wife explaining that officers had taken iPhones and laptops from the house).

Of the remaining three items, one was the VW Passat, and that was forfeited through state proceedings on November 14, 2016; and two—photographs of the search of the VW Passat and a "photo comparison" of Stoune—were not property belonging to Stoune. Docs. 127-2 at 3, 127-3 at 30, 31.

On May 18, 2017, Stoune filed a previous pro se motion in the criminal case, asking the Court to compel the United States to return the following items he contended had been taken from him during the investigation:

---

evidence by and in the custody of a law enforcement agency shall vest permanently in the law enforcement agency 60 days after the conclusion of the proceeding.

   (a) If the property is of appreciable value, the agency may elect to:

      1. Retain the property for the agency's own use;

      2. Transfer the property to another unit of state or local government;

      3. Donate the property to a charitable organization;

      4. Sell the property at public sale, pursuant to the provisions of s. 705.103.

   (b) If the property is not of appreciable value, the law enforcement agency may elect to destroy it.

Fla. Stat. § 705.105.

> XPS Laptop (Dell)
> Lenovo T40 Series Laptop
> Generic Tower PC
> Small form factor server
> Blue 'Swiss' backpack, including contents thereof
> Various external and internal hard drives
> DVD/CD case and contents
> Thumb drive wallet and contents
> Misc. items which include pictures, sunglasses, keys, address book, etc.
> 9mm Baretta PFS
> 22 long rife [sic]
> 9mm Beretta Storm & Holster

Doc. 97 at 1. He authorized a woman named Brittany Miller to "receive and maintain control over the items." Doc. 97 at 2.

The United States responded with an affidavit by SJCSO Sergeant G. Stephen Gazdick, the primary investigator. Doc. 105-1 ¶ 2. He explained that the SJCSO had purged and destroyed all items under the office's policy except for items transferred to the FBI and items used as evidence at trial. Doc. 105-1 ¶ 5. He explained that he had worked with FBI Special Agent ("SA") Abbigail Beccaccio, and SA Beccaccio had advised him the FBI took custody of the following items not used as evidence at trial:

> A Dell model PP09S laptop computer
> Four external hard drives with two charger power cords (recovered from a computer bag)
> Fourteen (14) compact disks
> A brown phonebook, an envelope with letters, and a small metal object
> Seven (7) pictures and one (1) magnet
> Six (6) pictures and three (3) magnets

Doc. 105-1 ¶ 4. He stated that neither the FBI nor the SJCSO had taken any firearms. Doc. 105-1 ¶ 6. The prosecutor suggested Stoune direct his representative to contact SA Beccaccio to arrange transfer of the above listed items and provided SA Beccaccio's telephone number for that purpose. Doc. 101 ¶ 5.

6

In July 2017, again without objection, the Court entered a final judgment of forfeiture of the camera and iPhone that had been seized from Stoune's person upon his arrest. Doc. 104.

In October 2017, Stoune filed an amended motion for return of property. Doc. 108. He asserted that he had tried to contact SA Beccaccio to effectuate return of the above listed items but had received no response. Doc. 108 at 1. He asked the Court to order the FBI to return "all confiscated property in it's [sic] possession" to Brittany Miller and order the SJCSO to submit proof it had destroyed his property. Doc. 108 at 1.

The United States responded that no representative for Stoune had called SA Beccaccio and, instead, Stoune had mailed a letter to SA Beccaccio (and FBI Special Agent in Charge Michelle Kimit) asking the FBI to provide a "complete list of the items that remain in the government's possession." Doc. 110-1. The United States reiterated that Stoune's representative should call SA Beccaccio to arrange transfer of the above listed items and again provided SA Beccaccio's telephone number for that purpose. Doc. 110 at 2.

The Court denied Stoune's request for an order directing the SJCSO to submit proof that the SJCSO had destroyed all items it had possessed because Sergeant Gazdick had submitted such proof through his affidavit stating as much. Doc. 113 at 1–2. The Court deferred ruling on Stoune's request for the return of his property, directed Stoune or his representative to contact SA Beccaccio by telephone to arrange transfer of the above listed items, and directed the United States to file a status report on the property transfer. Doc. 113 at 1–2.

In January 2018—before the deadline for the United States to file the status report—Stoune filed the current motion for return of property. Doc. 117. He asks the Court to order Sergeant Gazdick or the SJCSO to either (1) return all property taken from his home and VW Passat or (2) provide proof of destruction of the property and

7

pay him $1.25 million in actual loss plus whatever the Court deems appropriate for pain and suffering. Doc. 117 at 1–2. He states the following is a "partial list" of the property taken:

> 1x 2004 VW Passat (containing $2500 of personal property), 1x wallet (containing: FL State issued driver's license, various bank and credit cards, and SSN card), 1x blue swiss backpack containing: 1x black leather pouch with 6 stainless steel dice, 1x pc tool kit, various pens and pencils other office items) 1x Dell XPS laptop w power cord, 1x Lenovo T43 w power cord, 1x Lenovo T43, 1x Dell Tower pc, 1x Generic pc, 20–25 hard drives of various manufacturers, 1x "bag of computer components", 2 x 4s 32GB iPhones, 1x 5 64GB iPhone, 1x iPod touch, and 1x HP server w 8 hard drives and power supply.

Doc. 117 at 2.

A few days later, the United States provided a status report indicating that Stoune's representative—Brittany Miller—had met with SA Beccaccio and taken the items listed in the United States' original response. Doc. 118 at 1. Based on the status report, the Court denied as moot Stoune's original motion for return of property. Doc. 119.

The United States responded to Stoune's current motion for return of property, Doc. 127, with an affidavit of SA Beccaccio, Doc. 127-1, and SJCSO records (referenced above; specifically, an SJCSO property report, Doc. 127-2, and SJCSO chain-of-custody reports, Doc. 127-3), an email from Sergeant Gazdick setting forth Fla. Stat. § 705.105 ("Procedure regarding unclaimed evidence"), Doc. 127-5, and a November 26, 2017, letter from Stoune's ex-wife to Stoune (also referenced above), Doc. 127-6.

In the affidavit, SA Beccaccio states the following. She gave Stoune's representative—Brittany Miller—all non-evidentiary items that had been in the FBI's possession (the items listed in the United States' original response). Doc. 127-1 ¶¶ 4, 10. The SJCSO "purged, destroyed, or forfeited all property, including the forfeiture of [the] 2004 VW Passat … pursuant to [the office's] retention policy." Doc.

8

127-1 ¶ 5. SA Beccaccio reviewed a photograph of a certified-letter receipt indicating Stoune's ex-wife had received notice of forfeiture of the VW Passat on July 18, 2016. Doc. 127-1 ¶ 5. Neither the SJCSO nor the FBI took any firearms. Doc. 127 ¶ 9. Stoune's now ex-wife conveyed she had none of the items Stoune sought, sold firearms due to debt incurred from her divorce from Stoune and to pay bills for family care, placed many items in a storage unit for Stoune's girlfriend to collect, threw away some items, and kept some items for their children (a telescope, a sewing machine, guitars, a computer desk, and Stoune's baby book). Doc. 127-1 ¶ 7. SA Beccaccio attaches a letter from Stoune's now ex-wife to Stoune, in which she states:

> Dear Jon,
>
> All computer equipment (laptops + phones) were possessed by the police when they searched the house.
>
> Things we still have & I kept for the boys include the telescope, sewing machine, guitars, & computer desk.
>
> Guns were sold. Given my attorneys fees, kids' orthodontia, therapy bills, etc. I don't owe you anything.
>
> I do have your baby book, I figured the kids might be curious someday. I will certainly return that to you upon your release.
>
> Everything else you're worried about was either put in storage for your girlfriend to collect or was thrown out.
>
> I am done with all of this. Any attempts to make court demands or harass us will be handled by my attorney. Please direct any further complaints to Diane Paull, 1326 3rd St. S. #2, Jax Bch, FL 32250.

Doc. 127-6.

In a reply to the United States' response, Stoune contends he has been seeking the return of all non-evidentiary items since June 2015, when he says he was informed his VW Passat could be picked up. Doc. 128 at 1. He contends that, at that time, he wrote letters to "his mother" and unnamed "current wife" and they used "more than reasonable efforts" to get the property back, having called dozens of times

between June 2015 and August 2016, only to be met with "stonewalling tactics of claiming not to know where, or who, or what, and more often than not failure to return calls or answer them." Doc. 128 at 1. He contends that after all state charges had been dropped, he again tried to get property back, including by calling Paul Pinkham with the Federal Defender's Office, who consistently informed him he could not reach SA Beccaccio (though Stoune does not "believe that such efforts were actually made"). Doc. 128 at 1. He contends he asked both trial and appellate counsel to make reasonable efforts to get his property back, and his trial counsel informed him he would get his property back. Doc. 128 at 1–2. He again asks for $1.25 million, contending the destroyed property includes 35 years of priceless data (school work, emails, pictures, and documents) and, worth roughly $250,000, "backup" from employment for nearly 25 years and "personal data." Doc. 128 at 2. None of his filings include affidavits, other evidence, or further descriptions of lost data.

## Law & Analysis

Federal Rule of Criminal Procedure 41(g) provides:

> Motion to Return Property. A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Civ. P. 41(g).[3] "Deprivation of property" applies if the United States holds lawfully seized property beyond the time it needs it for investigative or prosecutorial

---

[3] A non-substantive amendment in 2002 reorganized Rule 41. Subsection (g) used to be subsection (e). A substantive amendment in 1989 eliminated a suppression provision from former subsection (e). See Fed. R. Civ. P. 41(e) (1988) ("A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property which was illegally seized. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted, the property

purposes. *United States v. Beach*, 113 F.3d 188, 189–90 (11th Cir. 1997). "A motion to return seized property under [Rule 41(g)] is a motion in equity." *United States v. Howell*, 425 F.3d 971, 974 (11th Cir. 2005); *accord United States v. Castro*, 883 F.2d 1018, 1020 (11th Cir. 1989). To merit relief under Rule 41(g), the movant must have a possessory interest in the property sought. *Howell*, 425 F.3d at 974.

Rule 41(g) applies only during a criminal proceeding. *United States v. Dean*, 80 F.3d 1535, 1542 n.6 (11th Cir. 1996). If a motion for return of property is filed after the criminal proceedings, the court should treat a motion for return of property as a civil action in equity. *United States v. Potes Ramirez*, 260 F.3d 1310, 1314 (11th Cir. 2001). In such a proceeding, the court has "equitable" or "anomalous" jurisdiction over the property. *Dean*, 80 F.3d at 1542; *accord United States v. Martinez*, 241 F.3d 1329, 1330–31 (11th Cir. 2001).

A court must exercise equitable jurisdiction with "caution and restraint" and should do so only to "prevent manifest injustice" in light of the movant's conduct and the merits of the request. *Martinez*, 241 F.3d at 1331 n.2. "Whether to exercise that jurisdiction in a given case is subject to the sound discretion of the district court." *Richey v. Smith*, 515 F.2d 1239, 1243 (5th Cir. 1975).

To make a "fair and just decision," a court should balance all equitable considerations. *Howell*, 425 F.3d at 974; *United States v. De La Mata*, 535 F.3d 1267, 1279 (11th Cir. 2008). Considerations include whether the government displayed callous disregard for the movant's constitutional rights, whether the movant has an individual interest in and need for the property, whether the movant will be irreparably harmed by denial of the relief requested, and whether the movant has an adequate remedy at law to redress his grievance. *Richey*, 515 F.2d at 1243–44. "Enveloping" those "are the basic equitable considerations of whether the [movant's]

---

shall be restored **and it shall not be admissible in evidence at any hearing or trial**.") (emphasized words eliminated by amendment).

11

conduct and the merits of his position require judicial review to prevent manifest injustice." *In re the Matter of $67,470*, 901 F.2d 1540, 1545 (11th Cir. 1990).

Under equitable principles, to obtain relief, a movant must have "clean hands." *Howell*, 425 F.3d at 974. "The unclean hands doctrine proscribes equitable relief when, but only when, an individual's misconduct has immediate and necessary relation to the equity that he seeks." *Henderson v. United States*, 135 S. Ct. 1780, 1783 n.1 (2015) (internal quotation marks omitted). "The doctrine might apply, for example, if a felon requests the return or transfer of property used in furtherance of his offense." *Id.*

The United States may rebut a showing for relief with evidence it has a legitimate reason to keep the property, it does not possess the property, or the property has been destroyed. *Potes Ramirez*, 260 F.3d at 1314. A legitimate reason to keep property is for use as possible evidence, including when a § 2255 motion is pending and could result in a new trial. *United States v. Garcon*, 406 F. App'x 366, 370 (11th Cir. 2010) (citing *United States v. Pierre*, 484 F.3d 75, 87 (1st Cir. 2007)).

If the United States claims property has been destroyed, a court errs if it denies a motion for release of the property without requiring the United States to submit an affidavit, declaration, or something else beyond a an unsworn statement that the property has been destroyed, *Potes Ramirez*, 260 F.3d at 1314, and must receive evidence on any material issue of fact, *United States v. Melquiades*, 394 F. App'x 578, 581–82 (11th Cir. 2010).

If a court determines an equitable remedy is appropriate, it may fashion equitable relief, even if property has been destroyed. *Potes Ramirez*, 260 F.3d at 1315. But due to sovereign immunity, money damages against the United States are unavailable. *Id.* at 1316. Furthermore, relief is unavailable if property is retained for civil forfeiture. *United States v. Eubanks*, 169 F.3d 672, 674 (11th Cir. 1999); *United States v. Watkins*, 120 F.3d 254, 255 (11th Cir. 1997); *Castro*, 883 F.2d at 1020.

If property is in the hands of state officials, the property is not within the jurisdiction of the federal court. *United States v. Prevatt*, 414 F.2d 239, 241 (5th Cir. 1969). An action for property over which the court has no jurisdiction should be dismissed without prejudice. *Clymore v. United States*, 164 F.3d 569, 574–75 (10th Cir. 1999). And if a movant makes no argument that it was the federal government (as opposed to a local or state law enforcement agency) that disposed of property, denial of equitable relief is warranted. *United States v. Cobb*, 703 F. App'x 879, 882–83 (11th Cir. 2017); *accord United States v. Solis*, 108 F.3d 722, 722 (7th Cir. 1997) (affirming denial of motion filed in closed federal criminal case for return of seized vehicle because the federal government never possessed the vehicle and was not the appropriate party from which to request its return). Moreover, because state forfeiture proceedings provide an adequate remedy at law, equitable jurisdiction is unavailable to challenge state forfeiture of property. *Clymore*, 164 F.3d at 571; *VanHorn v. Fla.*, 677 F. Supp. 2d 1288, 1299 & n.22 (M.D. Fla. 2009).

Here, the property Stoune seeks may be grouped into five categories.

The first category comprises evidence admitted at trial. *See* Doc. 104; Gov't Tr. Exs. 1–106. Those are in the Court's evidence storage room. Stoune does not appear to seek return of those items. His "unclean hands" would proscribe such relief anyway, *see Henderson*, 135 S. Ct. at 1783 n.1, as would the need to retain evidence in the event Stoune's § 2255 motion results in a new trial, *Garcon*, 406 F. App'x at 370. Also, the camera and iPhone that had been seized from Stoune's person upon his arrest and admitted at trial were forfeited without objection through a final judgment of this Court. *See* Gov't Tr. Exs. 65, 66; Doc. 104.

The second category is the VW Passat. Stoune makes no contention the United States ever possessed the car, and the evidence submitted—SA Beccaccio's affidavit, Doc. 127-1, the SJCSO property report, Doc. 127-2 at 1, and the SJCSO chain-of-custody records, Doc. 127-3 at 23—show the United States never possessed the car. Equitable relief against the United States for loss of the VW Passat is unwarranted

13

because the United States never possessed it, and additionally because the state forfeiture proceedings provide or provided an adequate remedy at law for any unlawful forfeiture (though nothing suggests an unlawful forfeiture occurred). *See Cobb*, 703 F. App'x at 882–83 (affirming denial of equitable relief to federal criminal defendant concerning seized vehicles because he "made no argument that it was the federal government, as opposed to the Tampa Police Department, that released and/or auctioned the vehicles"); *VanHorn*, 677 F. Supp. 2d at 1299 & n.22 (holding Rule 41(g) relief unavailable to recover property allegedly in the possession of the Hillsborough County Sheriff's Office, including because the movant has an adequate remedy in state court to recover any property in that office's possession); *cf. Clymore*, 164 F.3d at 571 ("[The federal criminal defendant's] assertion that federal authorities controlled the ongoing investigation and were 'involved' in the seizures, without more, is insufficient to establish the extensive federal possession or control necessary to make Rule 41[] the appropriate vehicle by which to recover the state-forfeited property[.]").

The third category comprises the items the SJCSO transferred to the FBI not used as evidence at trial. Any issue with those items was resolved when SA Beccaccio gave them to Stoune's representative—Brittany Miller. He makes no contention that the FBI has any other items, and SA Beccaccio's affidavit shows the FBI does not.

The fourth category comprises firearms. Although Stoune initially believed firearms had been seized, it is clear from Sergeant Gazdick's affidavit, Doc. 105-1, SA Beccaccio's affidavit, Doc. 127-1, Stoune's ex-wife's letter, Doc. 127-6, and the absence of any specific request for firearms in Stoune's current motion for return of property, *compare* Doc. 97 at 1 *with* Doc. 117 at 2, that no law enforcement officer ever seized firearms belonging to Stoune.

The fifth category comprises everything else, which are the items the SJCSO collected, never transferred to the FBI or used as evidence for the federal case, and ultimately destroyed more than 60 days after the state charges were nolle prossed.

Those items are or include the iPhones (besides the one seized from Stoune's person upon his arrest, used as evidence at trial, and ultimately forfeited), the laptops, and the other computer-related items. *See* Doc. 123-2 at 1–2; Doc. 127-2 at 1–2; Doc. 127-3 at 3–11, 13–18, 36, 37. As with the VW Passat, Stoune makes no contention the United States ever possessed the items, and the evidence submitted—the SJCSO property report, Doc. 127-2 at 1–3, and the SJCSO chain-of-custody records, Doc. 127-3 at 23—show the United States never possessed the items. Setting aside any possible "unclean hands" issue concerning the items, as with the VW Passat, equitable relief against the United States for destruction of them is unwarranted because, at a minimum, the United States never possessed them. Even if equitable relief against the United States were available, Stoune has proposed no appropriate equitable relief (instead, he asks for monetary damages of $1.25 million with nothing to support that exorbitant amount), and the undersigned can think of none.

An evidentiary hearing is unnecessary. Through Sergeant Gazdick's affidavit, Doc. 105-1, SA Beccaccio's affidavit, Doc. 127-1, the SJCSO property report, Doc. 127-2, and the SJCSO chain-of-custody records, Doc. 127-3, the United States has shown it possesses no property belonging to Stoune, and he has offered nothing to challenge that showing. *See Cobb*, 703 F. App'x at 883 (affirming district court's decision to decline to hold an evidentiary hearing because the United States showed through police records and an affidavit it did not have custody of the property sought).

### Recommendation[4]

I recommend denying the latest motion for return of property, Doc. 117, and dismissing the civil action in equity (filed within the closed criminal case) with prejudice as to any property ever possessed by the FBI and without prejudice as to any property never possessed by the FBI.

**Ordered** in Jacksonville, Florida, on September 10, 2018.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:  Rodney Brown, Assistant United States Attorney

    Jon Christopher Stoune
    No. 63042-018, Unit A-2
    Federal Correctional Complex
    P.O. Box 1031
    Coleman, FL 33521-1031

---

[4]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

Because a Rule 41(g) motion filed after the criminal proceedings is treated as a civil action in equity, the civil rules for objecting apply. *Cf. Potes Ramirez*, 260 F.3d at 1313−14 (rules for filing civil appeal apply to appeal of order on Rule 41(g) motion filed after the criminal proceedings).